VINCENT FOGGEY,

    Plaintiff,

      v.

CITY OF CHICAGO, et al.,

    Defendants.

No. 16 CV 10963

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

The City of Chicago fired Vincent Foggey from the Chicago Police Department, and he brings this action against the City, current and former employees of CPD, and members of the Chicago Police Board. The City, the CPD defendants, and the Board defendants each move to dismiss Foggey's seven-count amended complaint. *See* [28], [66]–[69], [70]–[74]. These motions are granted in part and denied in part.

## I.    Legal Standards

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain factual allegations that plausibly suggest a right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must accept all factual allegations as true and draw all reasonable inferences in the plaintiff's favor, but need not accept legal conclusions or conclusory allegations. *Id.* at 678–79.

## II.     Background

Foggey became a police officer for the City of Chicago over ten years ago. [27] ¶ 21.[1] In September 2014, he was on duty with his partner when there was "an incident" at a Walgreens store. *Id.* ¶ 22. "Defendants" accused Foggey of failing to assist his partner during the incident. *Id.* ¶ 23.[2] Foggey says he responded to his partner's request for assistance in accordance with his duties—he helped to physically control the subject, gave verbal demands, and deescalated the situation until the subject was in custody. *Id.* ¶ 24.

Three days after the incident, Foggey reported to one of his supervisors, Lieutenant Doss, that Sergeants Mendoza, Padilla, and Gray had violated department policies and procedures in connection with the investigation of the incident. *Id.* ¶ 25. Thereafter, Doss failed to initiate an investigation into the incident, in violation of CPD policy. *Id.* ¶ 26. Foggey also complained to District Commander Jones that the three sergeants were broadcasting video footage of the incident, which Foggey believed would compromise the investigation. *Id.* ¶ 28. Jones failed to discipline the sergeants or to direct them to stop broadcasting the footage. *Id.* ¶ 28. Foggey filed an official complaint against the three sergeants with CPD's Bureau of Internal Affairs. *Id.* ¶ 27. That same day, the City stripped Foggey of his duties and reassigned him to a lesser position due to Foggey's involvement in the

---

[1] Bracketed numbers refer to entries on the district court docket.

[2] The complaint refers to "defendants" throughout, and Foggey does not identify specific defendants in his claims, so I will assume that he alleges the fact (and brings each claim) against each defendant. This assumption aligns with how the parties have briefed the issues.

incident. *Id.* ¶ 34. Sergeant Baier signed Foggey's notification of duty restrictions. *Id.* ¶ 35.

Sergeant Hermann from the BIA conducted an investigation of Foggey's official complaint; she concluded that Foggey's complaint was unfounded. *Id.* ¶¶ 30–31. The City issued a thirty-day suspension without pay to Foggey for violating CPD's rules in connection with the incident. *Id.* ¶ 36. The then-Superintendent of CPD, Garry McCarthy, filed charges against Foggey and recommended that Foggey be discharged. *Id.* ¶ 37. McCarthy issued the suspension without pay to Foggey, which began on July 16, 2015. *Id.* ¶ 36. The Board held a hearing concerning the charges against Foggey on November 16 and 23, 2015; Foggey had prior written notice of the hearing and he was represented by legal counsel at the hearing. [28-2] at 2.[3] The Board considered testimony from Foggey, Foggey's partner, and two sergeants, as well as a video recording of the incident. *Id.* at 2–4. The Board determined that Foggey should be discharged, [27] ¶¶ 39–40, because Foggey failed to assist his partner. [28-2] at 2–7. Specifically, the Board explained:

> Police officers regularly encounter difficult subjects on the street. They are trained to rely on their partners, and use their radios and various control tactics in order to keep the public and themselves safe. In this case, Officer Foggey completely failed to utilize any of his training and displayed a gross sense of indifference to a dangerous situation. This left his partner in jeopardy and injured, and created confusion among those officers

---

[3] The City attaches the following exhibits to their motion to dismiss: the Police Board's Findings and Decision in *In the Matter of Police Officer Vincent A Foggey*, 15 PB 2889; Foggey's Complaint for Administrative Review in *Foggey v. Superintendent of Police, et al.*, 16-CH-5479, in the Circuit Court of Cook County; relevant circuit court orders issued in 16-CH-5479; and Foggey's motion for voluntary dismissal in 16-CH-5479. I take judicial notice of these records. *See Ennenga v. Starns*, 677 F.3d 766, 773–74 (7th Cir. 2012).

> responding and seeking to provide support. Further, Officer Foggey refused to take responsibility for his failures, even in the face of the video recording. His unwillingness to support his fellow officer in this case renders him unfit to continue to serve as a police officer.

*Id.* at 7. The City terminated Foggey on March 28, 2016. [27] ¶ 41. Foggey says his termination was in retaliation for his complaints and charges of discrimination.[4] *Id.*

Foggey says that both the BIA investigation and the Board's investigation of the charges against him were biased and improper, and that both investigations failed to afford him due process because: (1) defendants did not investigate the incident upon which Foggey's first complaint was based; (2) defendants did not stop the video footage of the incident from being broadcasted; (3) defendants failed to comply with General Order G08-01; (4) defendants did not properly consider witness statements and other evidence; (5) defendants failed to properly investigate his second complaint; (6) defendants did not follow their own disciplinary system regarding police officer rights and conduct; (7) defendants did not provide him progressive discipline; (8) defendants ruled against the manifest weight of the evidence provided during the proceedings; and (9) defendants did not conduct a sufficient investigation of the charges against him. *Id.* ¶¶ 32, 42. When the BIA or the Board investigates the conduct of white officers, Foggey says, they adhere to the procedural and due process protections. *Id.* ¶¶ 33, 43. Yet, when the BIA or the

---

[4] After the Board hearing, but before its decision, Foggey filed a Charge of Discrimination against the City with the Illinois Department of Human Rights alleging that the City discriminated against him on the basis of race and gender with respect to his July 2015 suspension. [27] ¶ 38; *see also* [28-2] at 11–40. A few months later, the City filed its response to Foggey's Charge of Discrimination, and within a week of that response, the Board decided that Foggey should be discharged. [27] ¶¶ 39–40.

Board investigates the conduct of black officers, no such procedures or protections are followed. *Id.* ¶¶ 33–34, 43–44.

Shortly after he was fired, Foggey filed a second Charge of Discrimination against the City with the EEOC alleging that the City discriminated and retaliated against him for engaging in protected activities (filing the first Charge of Discrimination and reporting the three sergeants). *Id.* ¶ 55. Meanwhile, Foggey sought administrative review of the Board's decision in state court. *See* [28-2] at 28, 32. The state court granted Foggey's motion for an extension of time to file his brief in support of administrative review. *Id.* at 34. A couple of weeks later, the U.S. Department of Justice issued Foggey a Right to Sue notice regarding his two agency charges of discrimination against the City. [27] ¶ 57. Foggey moved to voluntarily dismiss his state court action without prejudice and with leave to refile. [28-2] at 37. The state court granted the motion and dismissed Foggey's case with leave to refile. *Id.* at 39.

Foggey then brought his claims to federal court with this action. Count I asserts a Title VII race and gender discrimination claim; Count II asserts a Title VII retaliation claim; Count III asserts a race discrimination claim under 42 U.S.C. § 1981; Count IV asserts a race discrimination claim under 42 U.S.C. § 1983; Count VI[5] asserts a First Amendment retaliation claim under 42 U.S.C. § 1983; Count VII

---

[5] The amended complaint does not include a Count V.

asserts a Due Process claim under 42 U.S.C. § 1983; and Count VIII asserts a claim for *Monell* liability.[6]

## III.   Analysis

Defendants' motions to dismiss share many of the same arguments. The City, the CPD defendants, and the Board defendants all move to dismiss Foggey's amended complaint by arguing that the complaint is barred by *res judicata*; state actors cannot be sued under § 1981; and the complaint fails to allege actionable conduct under § 1983. Both the CPD defendants and the Board defendants also move to dismiss on the following bases: individual agents cannot be sued under Title VII because they are not Foggey's "employer" as a matter of law; the complaint fails to allege an adverse action under § 1983; and the complaint fails to allege a liberty interest under § 1983. Finally, the City argues that Foggey fails to state a *Monell* claim; the CPD defendants argue that they should be dismissed as protected by qualified immunity; and the Board defendants argue that they should be dismissed as protected by absolute immunity.

### A.   Res Judicata

*Res judicata* precludes plaintiffs from re-litigating claims that were or could have been litigated during an earlier proceeding. *Hayes v. City of Chicago*, 670 F.3d 810, 813 (7th Cir. 2012). Federal courts apply the law of preclusion from the state in which the prior decision originated. *Id.* Here, Illinois preclusion law governs, and to

---

[6] It was unnecessary for Foggey to name individual CPD defendants and Board defendants in their official capacities, *see* [27] ¶¶ 6–17, because he also brings this action against the City. An action against an individual in his official capacity is the same as an action against the municipality. *Sanville v. McCaughtry*, 266 F.3d 724, 732–33 (7th Cir. 2001).

preclude a plaintiff from bringing a claim, a defendant must establish the following elements: (1) "a judgment on the merits rendered by a court of competent jurisdiction"; (2) "an identity of cause of action"; and (3) "an identity of parties or their privies." *Id.* (quoting *River Park, Inc. v. City of Highland Park*, 184 Ill.2d 290, 302 (1998)); *Richter v. Prairie Farms Dairy, Inc.*, 2016 IL 119518, ¶ 22. Decisions by an administrative agency have preclusive effect under *res judicata* so long as the agency's proceedings were judicial in nature.[7] *Bagnola v. SmithKline Beecham Clinical Labs.*, 333 Ill.App.3d 711, 717–18 (1st Dist. 2002).

The defendants argue that there was a final judgment on the merits because the Board, after considering testimony and video evidence, found Foggey guilty and the Board discharged him; Foggey sought judicial review of that decision in Illinois state circuit court under the Administrative Review Law, 735 ILCS 5/3-101, *et seq.*; and ultimately, the circuit court dismissed his action pursuant to Foggey's motion to voluntarily dismiss the action under 735 ILCS 5/2-1009, rendering it "final and unappealable." *Ross v. Illinois Mun. Retirement Fund*, 395 Ill.App.3d 1073, 1078–79 (5th Dist. 2009). Courts have barred a public employee from bringing a Title VII or a § 1983 action concerning a discharge from employment when the public employee had previously litigated that issue in state administrative and state administrative

---

[7] The City argues, and Foggey does not dispute, that hearings by the Chicago Police Board are quasi-judicial administrative proceedings—they include notice to the litigants, a right to legal representation, testimony under oath, and the opportunity to present witnesses and evidence. [28] at 5–6 (citing 65 ILCS 5/10-1-18.1; Mun. Code Chi. 2-84-030; *Bagnola v. SmithKline Beecham Clinical Labs.*, 333 Ill. App. 3d 711, 717 (1st Dist. 2002)).

review proceedings. *See, e.g.*, *Bonnstetter v. City of Chicago*, 811 F.3d 969, 975 (7th Cir. 2016); *Walczak v. Chicago Bd. of Educ.*, 739 F.3d 1013, 1017 (7th Cir. 2014).

But on the other hand, if a court of competent jurisdiction never reviewed his claim, *res judicata* would not bar Foggey's action. *See Univ. of Tenn. v. Elliott*, 478 U.S. 788, 796 (1986) (un-reviewed state administrative proceedings do not have preclusive effect in federal civil rights cases). Since the circuit court granted his motion for voluntary dismissal *with leave to refile*, the order does not constitute a final judgment under Illinois law. *Brye v. Brakebush*, 32 F.3d 1179, 1180 (7th Cir. 1994), does not hold otherwise. The *Byre* court opined that *Elliott* does not apply when a state court has entered a judgment against the plaintiff, but also, the *Byre* court explained that federal courts, pursuant to 28 U.S.C. § 1738, must afford a state court judgment the same preclusive effect to which it would be entitled in that state's courts. *Byre*, 32 F.3d at 1183. Accordingly, the *Byre* court analyzed and applied the relevant state preclusion law, which provided that a voluntary dismissal is not on the merits unless otherwise specified in the court's order. *Id.* at 1184 (citing Wis.Stat. § 805.04(2)). Under Wisconsin law and the language of the dismissal order in that case, the *Byre* court concluded that the order was not a final judgment on the merits and *res judicata* did not apply. *Id.* at 1185. A similar conclusion is proper here.

"A ruling which is not a final order does not in any manner affect or determine any subsequent proceeding." *Arnold Schaffner, Inc. v. Goodman*, 73 Ill.App.3d 729, 732 (1979). A judgment is final when it terminates the litigation and

fixes the parties' rights absolutely. *Richter*, 2016 IL 119518, ¶ 24. For example, an order that dismisses an action "without prejudice" or with "leave to file an amended complaint" is not a final adjudication on the merits. *Id.* ¶ 25 ("A dismissal order that grants leave to amend is interlocutory and not final."). To determine whether a judgment is final, courts look to the substance rather than the form of the judgment. *Id.* ¶ 24.

Defendants' main argument here—that a final judgment exists whenever a court grants a voluntary dismissal under § 2-1009 of the Administrative Review Law because such a decision renders the underlying agency decision final and appealable—has been considered and disposed of by at least one Illinois court. *See Hernandez v. Bernstein*, 2011 IL App (1st) 102646, ¶ 10, *aff'd sub nom. Hernandez v. Pritikin*, 2012 IL 113054, ¶ 10; *see also Richter*, 2016 IL 119518, ¶¶ 39–40; *Piagentini v. Ford Motor Co.*, 387 Ill.App.3d 887, 893–95 (2009). In *Hernandez*, the court understood *Hudson v. City of Chicago*, 228 Ill.2d 462 (2008), to stand for the proposition that all *final* orders become immediately appealable upon voluntary dismissal of an action; but not that *non-final* orders become final upon voluntary dismissal of an action. *Id.* at ¶ 10 (citing *Piagentini*, 387 Ill.App.3d at 895). The court then concluded that because there was no final order from the circuit court, *res judicata* did not apply. *Id.* at ¶¶ 9–10 ("[A]n order dismissing a complaint but granting leave to replead is not a final order for purposes of *res judicata* until the trial court enters an order dismissing the suit with prejudice.") (quoting *Williams v. Ingalls Memorial Hospital*, 408 Ill.App.3d 360, 364 (2011)).

Like *Hernandez*, there was no final judgment on the merits in the prior action here. Foggey sought administrative review of the Board's decision in circuit court. Next, he successfully moved the circuit court for an extension of time to file his brief in support of administrative review. But, before he filed that brief, he moved to voluntarily dismiss the action without prejudice and with leave to refile. The circuit court granted his motion; its order states, in relevant part: "It is hereby ordered that the motion is granted and this lawsuit is voluntarily dismissed with leave to refile." [28-2] at 39. Since the order allows Foggey to refile his complaint, the litigation between the parties may continue, and it has not been terminated.[8] Defendants failed to establish the first requisite element of claim preclusion under Illinois law. I need not consider the parties' dispute over the second element or address the issue of privity between the City and the CPD defendants or the Board defendants. The motion to dismiss is denied as to the issue of *res judicata*.

Foggey may proceed on his Title VII claims, but only against his employer, the City. Since Title VII does not impose individual liability, *see Williams v. Banning*, 72 F.3d 552, 553–54 (7th Cir. 1995), Foggey may not pursue those claims against the CPD defendants.

### B.    Absolute Immunity

The Board defendants argue that they should be dismissed from this case because the doctrine of absolute immunity protects members of a quasi-judicial adjudicatory body from liability for their decisions. Foggey does not address this

---

[8] Because there was not a final judgment on the merits in the circuit court, claim splitting is not an issue here.

argument in his response brief, thereby forfeiting any arguments he may have. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011). In any event, I agree with the Board defendants.

"Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction." *Cleavinger v. Saxner*, 474 U.S. 193, 199 (1985) (quoting *Pierson v. Ray*, 386 U.S. 547, 553–554, (1967)). This doctrine of absolute immunity extends to non-judges who perform quasi-judicial functions. *Id.* To determine whether an official is entitled to absolute immunity, courts should consider the characteristics of quasi-judicial functions, which the Supreme Court identified in *Butz v. Economou*, 438 U.S. 478, 512 (1978): (1) the need to assure that the individual can perform his functions without harassment or intimidation; (2) the presence of safeguards that reduce the need for damages actions as a means for controlling unconstitutional conduct; (3) the insulation from political influence; (4) the importance of precedent; (5) the adversarial nature of the process; and (6) the correctability of error on appeal. *Heyde v. Pittenger*, 633 F.3d 512, 517 (7th Cir. 2011) (citing *Butz*, 438 U.S. at 512). The official seeking absolute immunity bears the burden of proof. *Id.*

These factors weigh in the Board's favor here. The Board's decision concerning a police officer's discipline necessarily involves public safety, *see Kappel v. Police Bd. of Chicago*, 220 Ill.App.3d 580, 591 (1st Dist. 1991), therefore, there is great need to ensure that the Board's members are free to decide such issues

without outside influences. Board members are appointed to five-year terms, which insulate them from political influence. Mun. Code Chi. 2-84-020. There are several procedural devices that provide for an adversarial nature of the process, which include written charges against the officer, an opportunity for the officer to be heard, prohibition against hearsay, the officer's right to counsel, right to be confronted by the officer's accusers, the right to cross-examine witnesses giving evidence against the officer, the right to present witnesses and evidence on the officer's behalf, proceedings under oath, subpoena power to secure witnesses and records, and a mandate that all proceedings be recorded. 65 ILCS 5/10-1-18.1 (1992); Municipal Code of Chicago 2-84-030. Decisions by the Board can be appealed under the Administrative Review Law. 735 ILCS 5/3-101, *et seq.*; *see also* 65 ILCS 5/10-1-45 (1982).

As such, the Board members have carried their burden of showing that they are entitled to absolute immunity for their actions involved in the quasi-judicial proceedings, which culminated in Foggey's termination. Since Foggey only alleges that the Board members are liable for their involvement in these proceedings, Foggey cannot state a claim against them. Defendants Lightfoot, Foreman, Balatte, Conlon, Eaddy, Fry, Simpson, Sweeney, and Valenzuela are dismissed from this action.

## C.    Discrimination Under 42 U.S.C. § 1981

Defendants argue that 42 U.S.C. § 1983 provides "the exclusive federal remedy" for alleged § 1981 violations by state actors. [28] at 9 (citing *Campbell v. Forest Preserve Dist.*, 752 F.3d 665, 671 (7th Cir. 2014); *Jett v. Dallas Independent*

*School Dist.*, 491 U.S. 701 (1989)); [66] at 7 (citing the same). Foggey asserts that a state actor can be liable under § 1981, just as it can be liable under § 1983, when "the execution of an official government policy or custom causes the alleged constitutional injury." [33] at 5 (quoting *White v. City of Chicago*, No. 96 C 3329, 1997 WL 392249, at *2 (N.D. Ill. July 8, 1997)). Foggey correctly cites the conclusion in *White*, but the weight of binding authority supports defendants' arguments. *See McQueen v. City of Chicago*, 2014 WL 1715439, at *1 (N.D. Ill. 2014) (collecting cases). The Supreme Court and the Seventh Circuit have held that violations of § 1981 are enforced against state actors by suits under § 1983, because § 1981 does not provide any such remedies. *Goldberg v. 401 N. Wabash Venture LLC*, 755 F.3d 456, 467 (7th Cir. 2014) (citing *Jett v. Dallas Independent School District*, 491 U.S. 701, 731–32 (1989); *Campbell*, 752 F.3d 665). As discussed below, Foggey's complaint does not state a claim for relief against defendants under § 1983 or *Monell*, and so Count III is dismissed.

### D. Discrimination Under 42 U.S.C. § 1983

To state a claim for employment discrimination under § 1983, Foggey must show that each defendant was personally involved in a "materially adverse action" taken against Foggey because of racial discrimination. *Lavalais v. Village of Melrose Park*, 734 F.3d 629, 635 (7th Cir. 2013); *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000). An employment action is materially adverse when it involves "a significant change in employment status," *Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016) (quoting *Andrews v. CBOCS W., Inc.*, 743 F.3d 230, 235 (7th Cir. 2014)), and is "more disruptive than a mere inconvenience or an alteration of job responsibilities."

13

*Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 779 (7th Cir. 2007) (quoting *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004)).

Of the actions Foggey identifies, only his allegations concerning a hostile working environment and his termination could constitute a materially adverse employment action. The complaint includes conclusory allegations that the discrimination "caused" the hostile work environment, *see, e.g.*, [27] ¶¶ 62, 83; but the response brief never refers to a hostile work environment. The CPD defendants assume that Foggey's allegations about Sergeants Mendoza, Padilla, and Gray playing video footage of the incident over a few days in September 2014, which Foggey says caused bias against him, were intended to support Foggey's hostile work environment theory. [66] at 13–14. To the extent that assumption is accurate, the CPD defendants have a persuasive response: the three sergeants could not be held liable for this activity because Foggey fails to show any link to his race, a requisite element for a hostile work environment claim. *See Racicot v. Wal-Mart Stores, Inc.*, 414 F.3d 675, 677 (7th Cir. 2005).

With respect to Foggey's termination, the City was the "actor," not the CPD defendants. The individual CPD defendants cannot be held liable under § 1983 for an action they did not perform, *see Iqbal*, 556 U.S. at 676, and the City can only be liable if Foggey can state a *Monell* claim. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). As discussed later, Foggey cannot state a *Monell* claim; thus, Count IV is dismissed.[9]

---

[9] I do not reach the arguments concerning the affirmative defense of the statute of limitations.

### E.    First Amendment Retaliation Under 42 U.S.C. § 1983

To establish a First Amendment retaliation claim, a public employee must first prove that his speech is constitutionally protected. *Kubiak v. City of Chicago*, 810 F.3d 476, 481 (7th Cir.), *cert. denied sub nom. Kubiak v. City of Chicago, Ill.*, 137 S.Ct. 491 (2016). Speech is protected when a public employee speaks as a citizen on a matter of public concern. *Id.* (citing *Garcetti v. Cellabos*, 547 U.S. 410, 418 (2006)). When public employees speak pursuant to their official duties, they do not speak as citizens. *Id.* (quoting *Garcetti*, 547 U.S. at 421). "Determining the official duties of a public employee requires a practical inquiry into what duties the employee is expected to perform, and is not limited to the formal job description." *Id.* (citing *Houskins v. Sheahan*, 549 F.3d 480, 490 (7th Cir. 2008)). Given that police officers have a duty to report police misconduct, defendants argue that Foggey's internal complaints constitute statements made pursuant to his official duties rather than statements made as a citizen.

In response, Foggey says that his speech is protected because his speech concerned information that he learned of as a victim of racial discrimination, not because of his position as a public employee. [33] at 6–7 (citing *Lane v. Franks*, 134 S.Ct. 2369, 2379 (2014)). But, *Lane* does not support Foggey's position. Rather, *Lane* makes clear that the "critical question" is "whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Id.* (citing *Garcetti*, 547 U.S. at 421). It is well established that police officers have a duty to report official misconduct. *Forgue v. City of Chicago*, 873 F.3d 962, 967 (7th Cir. 2017) (citing *Roake v. Forest Pres. Dist. of Cook Cty.*, 849 F.3d

342, 346 (7th Cir. 2017); *Kubiak*, 810 F.3d at 481–82; *Vose v. Kliment*, 506 F.3d 565, 571 (7th Cir. 2007)). Since making an internal report was within the scope of Foggey's official duties and because the subject of his complaint concerned an incident that occurred while he was on duty, I agree with defendants that when Foggey communicated via internal complaints, he spoke as a public employee and not as a private citizen.

Additionally, defendants note that Foggey's internal complaints and his charges of discrimination concerned his own employment and did not address a matter of public concern. Foggey does not respond to this argument. Nevertheless, the Seventh Circuit makes clear that "speech that serves a private or personal interest, as opposed to a public one, does not satisfy the standards for First Amendment protections." *Houskins*, 549 F.3d at 492; *see also Kubiak* 810 F.3d at 482 ("The Supreme Court has defined 'public concern' to mean 'legitimate news interest,' or 'a subject of general interest and of value and concern to the public at the time of publication.'") (internal quotation marks omitted) (quoting *City of San Diego v. Roe*, 543 U.S. 77, 83–84 (2004) (per curiam)). Although discrimination is certainly a public concern, when a public employee's communication only addresses the personal effects of such discrimination, the speech does not rise to the level of a matter of public concern, and it is not protected. *See Phelan v. Cook County*, 463 F.3d 773, 791 (7th Cir. 2006). That is true here; because Foggey's internal complaints and charges of discrimination were an attempt to combat the effect of the City's alleged racial discrimination against Foggey, individually, his speech in

those instances was not a matter of public concern. Foggey's speech is not protected and he cannot state a First Amendment Claim. Count VI is dismissed.[10]

### F.     Due Process Violation Under 42 U.S.C. § 1983

The City makes three arguments to support dismissal of Foggey's due process claim. First, Foggey has no protected interest in the investigation of his internal complaints. [28] at 11 (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Swick v. City of Chicago*, 11 F.3d 85, 86–87 (7th Cir. 1993)). Second, the Board hearing satisfied the standard set in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546 (1985), because it included notice, the right to legal counsel, cross examination, hearsay objections, and the chance to present witnesses and evidence. [28] at 12 (citing 65 ILCS 5/10-1-18.1; Mun. Code Chi. 2-84-030). Third, Foggey's allegation, taken as true, that video footage of the incident was broadcasted does not "overcome a presumption of honesty and integrity in those serving as adjudicators." [28] at 12 (citing *Alston v. Smith*, 840 F.3d 363, 368 (7th Cir. 2016) (citation omitted)). Foggey did not respond to any of these arguments, nor did he address his due process claim generally. Foggey has forfeited any arguments in opposition to the motion to dismiss on this issue. *Alioto*, 651 F.3d at 721.

The CPD defendants similarly argue that due process does not attach to a fact-finding investigation, which does not adjudicate or impose sanctions. [66] at 12 (citing *Hannah v. Larche*, 363 U.S. 420, 440–41 (1960)). Furthermore, playing a video cannot violate due process or compromise an investigation when there is no

---

[10] I do not reach the individual CPD defendants' arguments about their lack of a retaliatory action.

allegation that the individuals who participated in the adjudication of Foggey's discharge saw or learned of the video. *Id.* at 12–13 (citing *Alston*, 840 F.3d at 368). Foggey also did not respond to these arguments. Instead, Foggey advances a "stigma-plus" due process claim in his response brief. [84] at 19 (citing *Paul v. Davis*, 424 U.S. 693 (1976)). His theory is that defendants' public display of "certain portions" of the video footage constituted defamatory statements, which were made in order to assert that Foggey lacked the skills and integrity necessary to be a police officer. *Id.* at 20.

As the CPD defendants argue, Foggey cannot state a "stigma-plus" claim, because it requires that he show: (1) defendants made false and defamatory statements about him, (2) the stigmatizing information was publicly disclosed, and (3) he suffered a tangible loss of other employment opportunities as a result of public disclosure. *Strasburger v. Bd. of Educ., Hardin Cty. Cmty. Unit Sch. Dist. No. 1*, 143 F.3d 351, 356 (7th Cir. 1998); *Colaizzi v. Walker*, 542 F.2d 969, 973 (7th Cir. 1976). Foggey offers no support for the proposition that playing authentic video surveillance of him constitutes a false and defamatory statement. Nor does he show that playing the video within CPD is a public disclosure. Finally, there is no allegation that Foggey suffered a tangible loss of other employment, much less that he lost such an opportunity because of the video footage.

The record further demonstrates that Foggey received adequate process before being terminated from his police officer job with CPD. *See Loudermill*, 470 U.S. at 542. Count VII is dismissed.

## G. *Monell* Liability

To state a *Monell* claim against a municipality, a plaintiff must establish "the requisite culpability, (a 'policy or custom' attributable to municipal policymakers) and the requisite causation (the policy or custom was the 'moving force' behind the constitutional deprivation)." *Montano v. City of Chicago*, 535 F.3d 558, 570 (7th Cir. 2008) (quoting *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002)). With respect to a municipal policy, a plaintiff must show (1) an express policy that causes a constitutional deprivation; (2) "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law"; or (3) a person with final policymaking authority caused the constitutional injury. *Gable*, 296 F.3d at 537 (quoting *Baxter v. Vigo County School Corp.*, 26 F.3d 728, 735 (7th Cir. 1994)).

In response to the City's motion to dismiss the amended complaint for failure to state a *Monell* claim, Foggey argues that the superintendent and board members are final policymakers and their race-based decision to discharge him constitutes a plausible *Monell* claim. [33] at 7 (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) ("[I]t is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances.").

A final policymaker has the authority to make policy, laws, or rules for the conduct of government; "a person who merely implements existing law—rather than creating it—does not act with policymaking authority." *Gianessi v. City of Pekin*, 52 Fed. App'x 265, 268–69 (7th Cir. 2002) (citing *Auriemma v. Rice*, 957 F.2d 397, 399–400 (7th Cir. 1992)). In *Auriemma*, the court reasoned that because the Municipal

Code of Chicago bans racial discrimination in the police department and only grants the superintendent authority to manage the department pursuant to the city ordinances, state law, and police board rules and regulations, the superintendent could not be a final policymaker if he decided to discriminate on the basis of race, as such a decision would not implement the will of the City. That holding is binding here. When the superintendent and the board members discharged Foggey, they were bound by the same laws and regulations as was the superintendent in *Auriemma*. If they discharged Foggey on the basis of his race, they did so in violation of the laws and regulations under which the serve, and therefore, they could not have made that decision as a final policymaker for the City.

Although Foggey only raises the final policymaker argument in his response brief, it seems that his complaint attempted to show a widespread *de facto* policy of ignoring procedural and due process protections when conducting an investigation for the BIA or the Board into the conduct of a black officer, but strictly adhering to those procedures and protections when investigating the conduct of a white officer. *See* [27] ¶¶ 33, 43. Even if Foggey had made such an argument in his response brief, defendant's motion should still be granted because Foggey's allegations in the complaint did not contain enough specificity on this issue. *McCauley v. City of Chicago*, 671 F.3d 611, 616–17 (7th Cir. 2011) ("The required level of factual specificity rises with the complexity of the claim."); *Lanigan v. Vill. of E. Hazel Crest, Ill.*, 110 F.3d 467, 479 (7th Cir. 1997) ("There must be a 'direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'");

*Rodgers v. Lincoln Towing Serv., Inc.*, 771 F.2d 194, 202 (7th Cir. 1985) ("Boilerplate allegations of a municipal policy, entirely lacking in any factual support that a city policy does exist, are insufficient."). The City's motion to dismiss Foggey's *Monell* claims is granted.

## H. Qualified Immunity

"Qualified immunity protects officers performing discretionary functions from civil liability so long as their conduct does not violate *clearly established* statutory or constitutional rights that a reasonable person would know about." *Houlihan v. City of Chicago*, 871 F.3d 540, 546 (7th Cir. 2017) (citation omitted). A right is clearly established when a reasonable officer would have understood his actions as violating the right at issue. *Reichle v. Howards*, 566 U.S. 658, 664 (2012). Effectively, some existing precedent must have placed the statutory or constitutional principles pertaining to that right beyond debate. *Id.* To decide whether the defense of qualified immunity applies, courts consider (1) whether the plaintiff has alleged a deprivation of a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation. *Bianchi v. McQueen*, 818 F.3d 309, 319 (7th Cir. 2016).

Foggey argues that at the time of his discharge, his liberty interest in his continued employment, his right to be free from racial discrimination in his employment, and his right to speak on matters of public concern without fear of retaliation, were all clearly established. *See* [84] at 17. Yet, as discussed above with respect to each Count, Foggey has not sufficiently alleged a deprivation of a

constitutional right. For the same reasons that each count should be dismissed, defendants prevail on their arguments that qualified immunity applies here.

## IV.    Conclusion

Defendants' motions to dismiss, [28], [66]–[69], [70]–[74], are granted in part and denied in part. Foggey may proceed with his Title VII claims against the City, but the individual defendants and the *Monell* claim against the City are dismissed with prejudice.[11]


ENTER:

_____
Manish S. Shah
United States District Judge

Date:  February 5, 2018

---

[11] The Board defendants' absolute immunity and Foggey's failure to allege plausible § 1983 claims against the individual defendants after amending once in response to a motion to dismiss, *see* [16] at 12–13, [22], demonstrate that further amendment would be futile.